UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 6: 07-CV-051-KKC

SANDRA K. VICKERS,                                                              PLAINTIFF

vs.                                    **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                     DEFENDANT

* * * * * * * *

This matter is before the Court on the parties' Cross Motions for Summary Judgment.

For the reasons stated below, the Court hereby orders the Plaintiff's Motion for Summary

Judgment **DENIED** and the Defendant's Motion for Summary Judgment **GRANTED**.

## I.      Factual and Procedural Background

The Plaintiff, Sandra Vickers, alleges that she became disabled on July 17, 2003, when

she was involved in an automobile accident.  Vickers says that she suffers from a combination of

impairments, including low back pain, chronic neck pain, major depression, and post traumatic

stress disorder.  Shortly after the auto accident, Vickers began receiving treatment from Neeraj

Mahboob, M.D.  Vickers says that Dr. Mahboob treated her on a regular basis for neck and back

pain through June 30, 2005.  Dr. Mahboob observed contusions, a limited range of motions, and

paravertebral muscle spasm, and his records also noted anxiety.  Dr. Mahboob's medical

evidence revealed that Vickers had a history of treatment for complaints of lower back pain;

Vickers indicated that this pain was exacerbated by the auto accident.  Though her x-rays on the

day of the accident appeared normal, MRI results in September 2003 revealed a small annular

tear and posterior disc protrusion, as well as central stenosis and disc protrusions at multiple

levels of the cervical spine.  No neural compression, disc herniations, or other bony/soft tissue findings were evident, however, and films ruled out injury to the left leg, hip, and pelvis.  Dr. Mahboob provided palliative medication to Vickers, including narcotic pain and muscle relaxants and Xanax for subjective complaints of anxiety.

Dr. Mahboob referred Vickers to the Spine and Brain Neurological Center, where she was seen by Greg Wheeler, M.D., and his associate, Richard Lingreen, M.D.  Dr. Wheeler administered pain control preparations similar to those provided by Dr. Mahboob, supplemented by various facet joint, trigger point, and epidural injection therapies.  These were administered with varying success.  Dr. Lingreen noted Vickers' description of neck and arm pain following the auto accident, as well as pre-existing low back and lower extremity pain.  Dr. Lingreen observed tenderness and muscle spasm, and he recommended epidural steroid injections.  Vickers had a total of ten visits to the Neurological Center, the last on August 18, 2004.  On this last visit, Dr. Wheeler indicated a urine drug screen that had not been obtained by Vickers as requested, and he again required Vickers to obtain the drug screen.  An office note of Dr. Wheeler's on this date states that Vickers "denies any major depression."

Two physical residual functional capacity forms were submitted by state agency physicians on July 9, 2004 and September 29, 2004.  These forms indicated that Vickers retained the ability to perform a limited range of medium exertion.  There were no treating or examining source statements regarding physical capacity on record for these state examiners to review when submitting their statements.

Vickers began receiving treatment at the Cumberland River Comprehensive Care Center in July 2004.  Observations there included Vickers having a depressed mood, labile affect,

coherent speech and thought, some insight into problems, tearfulness, and self-blame, and that Vickers is honest and reliable.  A treating psychiatrist at the Care Center, John Schremley, M.D., diagnosed Vickers with major depression, single episode, moderate, and post traumatic stress disorder, chronic.  Dr. Schremley also opined that Vickers suffers from chronic pain and noted that she is unable to work.  Dr. Schremley also estimated her intelligence as average, characterized her as cooperative and compliant, and assessed a Global Assessment of Functioning ("GAF") score of 55, the latter indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning.  Vickers was medicated with various psychotropic drugs for this diagnosis.  Vickers reported waxing/waning of symptoms which were related predominantly to situational factors.  Vickers responded well to a sleep medication, Remeron, but discontinued this after experiencing weight gain.  Vickers also reported a benefit from Vistaril, but was unable to tolerate Thorazine and gained no relief from anti-depressant medication.

In June 2005, Vickers was referred to a second pain management clinic.  To gain admission, Vickers had a drug screen, which was negative for all substances, including opiates and benzodiazapines, even though Vickers had been receiving such medications on a long-term basis.  Upon learning of this, Dr. Mahboob ceased prescribing controlled products, as it appeared from the negative drug screen that Vickers was not utilizing her medications properly.  After this, Vickers saw Craig Leicht, M.D., another pain management professional.  An updated MRI scan that Dr. Leicht obtained revealed only degenerative disc disease at the L4/5 and L4/SI regions.  On July 15, 2005, Dr. Leicht initiated treatment with Vicodin and Zanaflex.

On June 9, 2005, psychiatrist Raquel Vasquez, M.D., interviewed Vickers.  Dr. Vasquez

3

reinitiated Vickers' Xanax treatment, as well as Lexapro and Vistaril.  Dr. Vasquez also began

counseling for stressors and grief issues.  During this counseling, Vickers endorsed crying spells,

sadness, and decreased energy.  However, Vickers denied mania or other psychotic

manifestations, and Dr. Vasquez noted no psychomotor agitator or other concerning signs when

Vickers returned for another appointment on July 7, 2005.

Vickers also was seen on a consultative basis by psychologist Crystal Sahner, Psy.D., on

July 20, 2004.  Dr. Sahner noted that Vickers had begun treatment for depression, and that she

had been having intrusive thoughts, sleep disturbances, as well as restricted activity and chronic

pain.  Vickers' speech and thought content, however, were considered normal and appropriate.

Dr. Sahner also noted no significant deterioration in Vickers' personal or social habits.  There

were no deficits in Vickers' posture, her motor activity was unremarkable, and she appeared

coherent, oriented, and alert.  Vickers was able to name digits backwards on a digit span test, and

correctly performed simple mathematical equations.  She was also able to spell words correctly,

both forwards and backwards, and could interpret proverbs and demonstrate adequate insight.

Vickers' memory and recall were normal, and though she appeared tense and sad, she was

cooperative.  Vickers described social isolation and withdrawal, but also noted that her

medication had helped her with these symptoms.  Vickers experienced no delusions or

hallucinations.  Though Dr. Sahner noted multiple current stressors and overtaxed coping skills,

she also noted that Vickers was socially responsible and able to use adequate social judgment.

Vickers reported to Dr. Sahner that she was able to perform household tasks and laundry.  Dr.

Sahner diagnosed Vickers with post traumatic stress disorder and depressive disorder, NOS.  Dr.

Sahner also opined that Vickers' ability to tolerate the stress and pressure of a day-to-day work

4

environment is markedly affected by her level of depression, and that her ability to sustain attention and concentration in performing even simple repetitive tasks is moderately restricted as a result of her anxiety and depression.

Psychiatric review technique forms were also submitted by two state agency physicians, Drs. Jane Brake and Edward Ross, on August 6, 2004 and September 24, 2004, respectively. Both doctors found moderate restrictions in Vickers' activities of daily living because of her depression and post traumatic stress disorder. Dr. Brake found a moderate restriction in Vickers' ability to work in coordination with or proximity to others without being distracted, and that Vickers' ability to interact with the public is moderately limited. Dr. Brake also predicted a moderate restriction in Vickers' ability to travel in unfamiliar places or use public transportation. Dr. Ross concurred in Dr. Brake's assessments.

On December 7, 2004, Dr. Mahboob submitted a physical medical assessment form about Vickers. Dr. Mahboob concluded that Vickers should be restricted to lifting no more than two to three pounds occasionally and that her ability to stand and walk is limited to no more than one to two hours during an eight-hour workday. Dr. Mahboob also concluded that Vickers' capacity for sitting in a work context is similarly limited, that she can never climb or crawl, and that she must move around every fifteen to twenty minutes. Dr. Mahboob also recommended avoidance of exposure to heights, moving machinery, temperature extremes, and vibration.

On April 26, 2004, Vickers filed claims with the Social Security Administration for Disability Insurance Benefits and Supplemental Security Income payments. These claims were denied initially and on reconsideration. Vickers then requested a hearing, which was held on September 14, 2005 before an Administrative Law Judge (ALJ) in London, Kentucky. On

October 12, 2005, the ALJ denied her claims.  The ALJ rejected Dr. Mahboob's medical assessment and found that Vickers is not disabled within the meaning of the Social Security Act, due to her containing a residual functional capacity that allows her to make a successful adjustment to work that exists in significant numbers in the national economy.  The Appeals Council denied review of the ALJ's conclusions on December 9, 2006; the Agency then adopted the ALJ's opinion as its own.  Vickers now asks this Court to review the ALJ's decision.  She argues that the ALJ improperly rejected the opinions of Drs. Mahboob, Sahner, Brake, and Ross, and that the decision is not supported by substantial evidence.  For the reasons given below, the Court affirms the ALJ's decision.

II.     **Standard of Review**

        When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).  The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve

conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

## III.    Analysis

Vickers raises three points of error in the ALJ's decision. First, she contends that the ALJ improperly rejected Dr. Mahboob's medical assessment. Second, she similarly contends that the ALJ improperly rejected the psychological opinions of Drs. Sahner, Brake, and Ross. The ALJ's opinion, Vickers argues, does not contain adequate rationales for the rejection of these sources. Finally, Vickers contends that the ALJ's decision that she is not disabled is not supported by substantial evidence.

## A.    Rejection of Dr. Mahboob's Medical Assessment

It is the responsibility of the Social Security Administration to determine whether a disability claimant is actually disabled. 20 C.F.R. § 404.1527(e)(1). In making this determination, the Administration (acting through the ALJ) reviews medical opinions and sources for evidence about the nature and severity of a claimant's alleged impairments. *Id.* at (e)(2). Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairments. *Id.* at (a)(2). Medical sources refer to three different types of sources that provide evidence about a claimant's impairments: treating sources, nontreating sources, and nonexamining sources. *Id.* § 404.1502. A treating source is a claimant's own physician, psychologist, or other acceptable medical source who provides, or has provided, the claimant

7

with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. *Id.* A nontreating source is a physician, psychologist, or other acceptable medical source who has examined the claimant but does not have, or did not have, an ongoing treatment relationship with the claimant. *Id.* A nonexamining source is a physician, psychologist, or other acceptable medical source who has not examined the claimant but provides a medical or other opinion in the claimant's case. *Id.*

When making a disability determination, the ALJ must evaluate every medical opinion it receives, regardless of type of medical source it comes from. *Id.* § 404.1527(d). More weight is to be given to opinions of treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ." *Id.* at (d)(2). The ALJ must give an opinion of a treating source controlling weight in his disability determination if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's case record. *Id.* If the treating opinion is not given controlling weight, it must be evaluated according to other factors, such as length, nature, and extent of the treatment relationship; frequency of the examination; supportability; consistency; specialization of the source; and any other factors brought to the ALJ's attention. *Id.* at (2)-(6).

Particularly important is a procedural requirement which states that, "[the Social Security Administration] will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion." *Id.* at (2). As the Sixth Circuit explained, "a decision denying benefits 'must contain specific reasons for the weight given to the treating

source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6ᵗʰ Cir. 2004) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)).

As Vickers' treating physician, Dr. Mahboob qualifies as a treating source. "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6ᵗʰ Cir. 2007) (quoting 20 C.F.R. § 404.1502). Moreover, "[a] physician seen infrequently can be a treating source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition.'" *Id.* Vickers states that Dr. Mahboob treated her on a regular basis from shortly after her July 2003 auto accident through June 2005, a period of nearly two years. This is a frequent enough treatment basis for Dr. Mahboob to be considered a treating source. Moreover, the Commissioner does not appear to contest this classification. Dr. Mahboob is a treating source, and his submitted medical assessment is a medical opinion, as it is a "statement from a physician . . . reflect[ing] judgments about the nature and severity" of Vickers' condition.

The ALJ was thus required to give "good reasons" for the weight given to Dr. Mahboob's opinion. It is this Court's judgment that the ALJ satisfied this procedural requirement. In his decision, the ALJ discussed the findings in Dr. Mahboob's assessment. The ALJ noted that Dr. Mahboob "assessed Ms. Vickers' with the capacity to perform less than a full range of sedentary work or to retain the mental capacity for sustained work activity." The ALJ then went on to explicitly reject the assessment "based on a lack of supporting evidence." The ALJ explained

9

this rejection by stating that "Dr. Mahboob's own clinical and diagnostic evidence does not correlate with such excessive limitations nor does the remaining evidence of record which fails to show impairments of such severity as to result in such extreme limitations."  This is akin to stating that Dr. Mahboob's assessment is not "well-supported by medically accepted clinical and laboratory diagnostic techniques," in that the doctor's own evidence does not support his findings, and that the assessment is "inconsistent with the other substantial evidence," in that the remaining record evidence also does not support the doctor's findings.  The Sixth Circuit has recognized these as "good reasons" for rejecting a treating source's opinion.  *See Bass v. McMahon*, 2007 U.S. App. LEXIS 19832, at *13 (6th Cir. Aug. 21, 2007) (upholding ALJ's rejection of treating source opinion because its findings were inconsistent with treating source's previous statements and were contradicted by substantial evidence in the record).

Moreover, the ALJ supported his contention that Dr. Mahboob's opinion is without supporting evidence by detailing the contradictory evidence and comparing it to Dr. Mahboob's own assessments.  The ALJ noted that all of Vickers' treatment has been conservative in nature, and that there were no referrals for surgery or "other aggressive measures" by Dr. Mahboob or anyone else.  Her clinical and diagnostic examinations were "relatively unremarkable."  There were no documented musculoskeletal abnormalities that could have been reasonably expected to result in the degree of pain alleged by Vickers and Dr. Mahboob.  Vickers does not participate in any physical or other rehabilitative techniques, or use an ambulatory aid or back brace.  Vickers has not required undue emergency care or inpatient management for pain control.  She does not use a pain control device, such as a TENS unit.  Vickers' pain appears to be well-controlled using oral analgesics, and she has not required "additional aggressive treatments through intramuscular

or intravenous pain medications," other than injection therapies.

The ALJ further noted that testimonial and other evidence of record "shows no more than mild to moderate limitations in the first three categories of the 'B' criteria and no episodes of decompensation." The record evidence showed that Vickers could prepare meals, drive, shop for groceries, clean her house, do laundry, and serve as a caretaker for her father. The ALJ stated that there was no evidence of repeated episodes of mental decompensation of extended duration, or of a current history of one or more years' inability to function outside of a highly supportive living arrangement. Significantly, the ALJ found that "there is no evidence of a complete inability on the claimant's part to function outside the area of her own home." All these findings, based on evidence of record, belies Dr. Mahboob's assessment of Vickers' condition.

Moreover, the ALJ also examined the psychological evidence to explain why Dr. Mahboob's assessment is not supported by evidence of record. The ALJ noted that Vickers has not required any emergency care for anxiety or significant depressive symptoms. Vickers has also not required inpatient treatment for an overt psychiatric disorder. The ALJ stated that Vickers' symptoms appear to be "predominantly situational in nature."

Vickers contends that the ALJ failed to consider Dr. Lingreen's findings, which, she argues, support Dr. Mahboob's assessment. Dr. Lingreen was an associate of Dr. Wheeler; Dr. Wheeler was the doctor to whom Vickers was referred by Dr. Mahboob. Dr Wheeler's findings and observations are discussed in the ALJ's opinion. As noted above, Dr. Wheeler administered similar pain control treatment as Dr. Mahboob, supplemented by injection therapies. Dr. Wheeler reviewed the earlier MRI and identified a small annular tear, protrusions with disc degeneration but with no compression, and stenosis. Dr. Wheeler found no disc herniations or

11

other bony/soft tissue findings.  Though the ALJ did not explicitly state that these findings do not support Dr. Mahboob's assessment, this is implicit based on his discussion of Dr. Wheeler's findings and his conclusion that Dr. Mahboob's assessment "does not correlate with . . . the remaining evidence of record."  It is reasonable to conclude, as the ALJ implicitly did, that Dr. Wheeler's minimal findings of muscular and bone impairments and controllable pain fail to support Dr. Mahboob's disability assessment.

Dr. Wheeler's associate, Dr. Lingreen, made observations that were consistent with Dr. Wheeler's.  Dr. Lingreen observed the MRI results, as did Dr. Wheeler.  He observed muscle spasm and tenderness, consistent with Dr. Wheeler's findings of annular tear and disc degeneration.  He also noted Vickers' description of Vickers' neck and back pain, and prescribed injection therapy, as did Dr. Wheeler.  An explicit discussion of Dr. Lingreen's observations would have added little, if anything, to the ALJ's opinion.  After all, "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) (quoting *Loral Defense Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).  Additionally, as the Commissioner pointed out, the record did not actually contain any opinion from Dr. Lingreen for the ALJ to consider in the first place.  The fact that the ALJ did not explicitly discuss the remarks that Vickers attributes to Dr. Lingreen is not reversible error.

In sum, the ALJ carefully considered all evidence that was put before him for review and concluded that, taken as a whole, the evidence of record did not support Dr. Mahboob's assessment and instead called for a rejection of that assessment.  The ALJ explicitly stated this reasoning in his discussion of Dr. Mahboob's assessment, and further explained it by setting

forth the record evidence that appeared to contradict Dr. Mahboob's disability conclusions. This explanation, which obviously, if impliedly, argues that Dr. Mahboob's assessment was "inconsistent with the other substantial evidence in [the] case record," is a sufficient reason to not give the assessment "controlling weight" in the ALJ's decision. *See* 20 C.F.R. § 404.1527(d)(2). Moreover, the record evidence discussed at length above attacks both the "supportability" and the "consistency" of Dr. Mahboob's assessment. As noted, these are factors that the ALJ uses to determine the weight to place on a medical opinion, such as Dr. Mahboob's. *See id.* at (d)(3)-(4). Although, in his analysis of the contradictory record evidence, the ALJ did not explicitly compare and contrast it with Dr. Mahboob's own findings, he was not required to. It is sufficient to support an ALJ's decision to reject a treating source opinion if the record evidence discussed discounts the value of that opinion, even if only indirectly. *See Nelson*, 195 Fed. Appx. at 470 (finding that a treating source opinion was properly rejected by the ALJ where other record evidence indirectly attacked the supportability and consistency of the opinion, even where no explicit indication of the weight given to the treating source opinion was provided by the ALJ).

Vickers cites *Wilson v. Commissioner of Social Security* for her contention that the ALJ failed to offer an adequate explanation for his dismissal of Dr. Mahboob's assessment. In *Wilson*, the ALJ summarily dismissed the treating source's opinion, providing no explanation whatsoever as to why the opinion was entitled to no weight. The Sixth Circuit sensibly found that this cannot satisfy the "good reasons" requirement of the Social Security regulations. "To state that [the treating source's] opinion 'may be an accurate assessment,' followed by a bald statement of the issue that the ALJ must ultimately resolve, can hardly amount to 'giving good reasons' for rejecting [the treating source's] opinion." *Wilson*, 378 F.3d at 545. However,

*Wilson* is inapplicable here.  As discussed, the ALJ did not summarily dismiss Dr. Mahboob's assessment.  Rather, he explained his basis for rejection, and supported it with a discussion of contradictory record evidence.  This is a far cry indeed from the *Wilson* scenario, where the ALJ not only gave no rationale for rejecting the treating source's opinion, but even conceded the possible accuracy of the opinion.  Since Vickers' ALJ gave "good reasons" for his rejection of Dr. Mahboob's medical assessment, he satisfied the procedural requirements of 20 C.F.R. § 404.1527(d) as regards the analysis of treating source opinions.

**B.      Failure to Explicitly Consider Drs. Sahner, Brake, and Ross's Opinions**

Vickers also faults the ALJ for his rejection of Drs. Sahner, Brake, and Ross's opinions without adequate explanation.  Unlike the rejection of Dr. Mahboob's assessment, where the ALJ offered explicit reasons for his decision, the rejection of Drs. Sahner, Brake, and Ross's assessments were not accompanied by any explicit rationale.  However, for the reasons stated below, the Court finds no fault with the ALJ in his decision here.

The Social Security regulations instruct the ALJ to evaluate every medical opinion that is received, regardless of its source.  20 C.F.R. § 404.1527(d).  The ALJ generally "give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]."  *Id.* at (d)(1).  The same factors that the ALJ applies to determine the weight to be placed on treating source opinions are used to determine the weight placed on nontreating and nonexamining source opinions.  *Id.* at (d)(3), (f). Further, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do

14

not work for [the government]." *Id.* at (f)(2)(ii).

Vickers cites *Wilson v. Commissioner of Social Security*, discussed above, for her argument that the failure to provide reasons for the rejection of these doctors' opinions requires reversal of the ALJ's decision. In *Wilson*, the Court reversed the ALJ's decision because he provided no explanation for his rejection of a doctor's opinion. *See Wilson*, 378 F.3d 541. However, the doctor in *Wilson* was a treating source. The *Wilson* Court specifically relied on the Social Security regulations' command that the ALJ "give good reasons" for the weight given to a "treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *Wilson*, 378 F.3d at 545.

The Sixth Circuit later clarified that ALJs are only required to give reasons for their dismissals of treating source opinions, and not for opinions from any other medical sources. "[E]ven if the purpose of the reasons-giving requirement in § 404.1527(d)(2) applies to the entire regulation, the SSA requires ALJs to give reasons for only *treating* sources." *Smith*, 482 F.3d at 876. *Smith* is directly on point with Vickers' case. In *Smith*, the claimant was denied disability benefits by the ALJ. In reaching his decision, the ALJ reviewed all the evidence, but failed to provide any reasons for disregarding two doctors' opinions that supported the claimant's case. The Court upheld the ALJ's decision, despite his failure to provide any rationale for rejecting the opinions, because the Social Security regulations only require that reasons be given for the rejection of treating sources, and not other sources. "Before determining whether the ALJ violated *Wilson* by failing to properly consider a medical source, we must first classify that source as a 'treating source.'" *Id.* at 876. Finding that the doctors there were not treating sources, the Court concluded that, "[i]n the absence of treating-source status for these doctors, we do not reach the question of whether the ALJ violated *Wilson* by failing to give reasons for not

15

accepting their reports."  *Id.*

Dr. Sahner is a psychologist that Vickers saw once, on a consultative basis, by request of the Agency.  This appears to be the only time that Dr. Sahner ever examined Vickers.  Dr. Sahner cannot properly be considered a treating source, which requires that the claimant "see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)."  20 C.F.R. § 404.1502.  Dr. Sahner only met with Vickers once, and only by request of the Agency.  As such, Dr. Sahner is rightly classified as a nontreating source.  *See id.* ("The term [nontreating source] includes an acceptable medical source who is a consultative examiner for [the Social Security Administration]."); *see also Smith*, 482 F.3d at 876 (finding that reports from doctors who only examined the claimant once and wrote only a single "physical capacity evaluation" do not merit treating-source status).  Vickers also admits in her summary judgment motion that Drs. Brake and Ross are nonexamining psychologists.  Their Psychiatric Review Technique forms therefore merit nonexamining-source status.  Since none of the opinions are from treating sources, the ALJ was not required to articulate reasons for rejecting them.

Moreover, even though the ALJ was not required to give explicit reasons for rejecting the psychologists' reports, it should be noted that he actually referenced several of the psychologists' findings, and incorporated them into his decision, in an indirect way.  The ALJ utilized a vocational expert (VE) to determine whether jobs exist in the national economy for one with Vickers' residual functional capacity.  In doing so, the ALJ asked the VE to assume a variety of specific work restrictions, including the following: Vickers' use of judgment, as well as her abilities to tolerate work stress and function independently, are limited but satisfactory, and that

16

she has a severe limitation in maintaining her attention and concentration.  These assumptions

that the ALJ asked the VE to make are consistent with some of the psychological examiners'

findings, such as their finding that Vickers' ability to sustain her attention and concentration is

moderately restricted.  The VE's assumptions admittedly do not go so far as to accept Dr.

Sahner's conclusion that Vickers' ability to tolerate stress and pressure is "markedly affected,"

but they do not need to.  The ALJ need only adopt and utilize those findings that he accepts as

accurate.  *See Morris v. Comm'r of Soc. Sec.*, 2007 U.S. App. LEXIS 11039, at **7 (6th Cir. May

8, 2007) ("The ALJ evaluated the opinions of Morris' physicians (treating and otherwise),

*adopted those medical opinions it found appropriate*, and then presented those opinions in the

form of a hypothetical to the vocational expert.  There was no error." (emphasis added)).

Vickers' ALJ did not err in failing to explicitly articulate his reasons for rejecting the opinions of

Drs. Sahner, Brake, and Ross.

**C.      Substantial Evidence Supports the ALJ's Decision**

Vickers' final argument is that the ALJ's decision that she is not disabled is not

supported by substantial evidence.  For the reasons given below, the Court disagrees and upholds

the ALJ's determination of non-disability.

To determine whether a social security claimant is legally disabled, the ALJ must perform

a five-step evaluation.  The claimant bears the burden of proof for the first four steps, the ALJ

bears the burden for the fifth step.  First, if the claimant is performing substantial gainful work,

she is not disabled.  Second, if the claimant is not performing substantial gainful work, her

impairment(s) must be considered "severe" before can be considered disabled.  Third, it must be

determined whether the claimant's impairment is at least as severe as one in the Listing of

17

Impairments, Appendix 1, Subpart P, Regulation No. 4, and is expected to result in death or to last at least twelve months.  If so, the claimant is presumed disabled.  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.  Finally, even if the claimant cannot perform her past relevant work due to her impairments, if other work exists in the national economy in significant numbers that accommodates the claimant's residual functional capacity and vocational factors, she is not disabled.  *See* 20 C.F.R. § 404.1520(a)(4); *Kornecky*, 167 Fed. Appx. at 498-500.

The ALJ performed this five-step evaluation in reaching his decision.  He ultimately determined that although Vickers' impairments are "severe" within the meaning of the Social Security regulations, in that they significantly limit her physical or mental ability to do basic work activities, they are not severe enough to meet or medically equal one in the Listing of Impairments.  The ALJ then determined that Vickers retains a residual functional capacity for medium work, though not for work requiring more than occasional climbing.  He also determined that Vickers can occasionally stoop, crouch, and crawl, that she should avoid concentrated exposure to extreme cold and vibration, and that she requires a sit/stand option every forty-five minutes.  The ALJ additionally found that Vickers has a limited but satisfactory ability to use judgment, deal with work stresses, and function independently, and that she is seriously limited in her ability to concentrate, consistent with the VE's assumptions.  The ALJ then determined, with the aid of the VE's testimony, that Vickers could not perform her past relevant work.  Finally, the ALJ then considered Vickers' age, education, past work experience, his findings regarding her physical and mental impairments, and the VE's testimony to determine that Vickers could perform a significant range of medium work.  The ALJ ultimately found that

18

Vickers was still capable of working as a production laborer, machine tender, or hand packer.

There is substantial evidence to support the ALJ's determinations. The record evidence discussed earlier regarding the rejection of Dr. Mahboob's assessment amply demonstrates this. Vickers' treatment record under Dr. Mahboob revealed minimally positive findings on an intermittent basis only. Vickers' pain became well-controlled through the use of prescribed medications, she had no sensory or motor deficits, and she had a good range of motion in all her joints. While at the Comprehensive Care Center, her therapists assessed her with a GAF of 55, which denotes only moderate symptoms/limitations, and Vickers herself denied any major depression. Although Vickers endorsed crying spells, sadness, and decreased energy upon visiting Dr. Vasquez, she denied mania or other psychotic manifestations, and Dr. Vasquez noted no psychomotor agitation or other concerning signs.

Dr. Sahner's observations also bolster the ALJ's conclusions. As discussed in greater detail above, Dr. Sahner described Vickers as cooperative, socially responsible, and able to use adequate social judgment. Dr. Sahner noted that Vickers' speech was normal, logical, and goal-directed, and that she appeared coherent, oriented, and alert. Vickers' motor activity was deemed unremarkable. Dr. Sahner stated that Vickers retained the capacity to perform simple, repetitive tasks, and had an adequate capacity to interact appropriately with others.

Further, the ALJ noted evidence that Vickers never required emergency care for her psychological symptoms or inpatient treatment for overt psychiatric disorders. Her physical treatment was conservative in nature, her examinations were unremarkable, and there were no documented instances of musculoskeletal abnormalities. Vickers participates in no physical therapies and utilizes no pain control devices. Vickers was able to perform such daily activities

19

as preparing meals, driving, shopping, cleaning, doing laundry, walking around her yard, and chauffeuring family members.  These daily activities indicated to the ALJ that Vickers was not a totally incapacitated individual.

Importantly, the ALJ also placed great weight on his finding that Vickers lacked credibility.  Vickers had a drug screen in 2005 that was negative for all substances, including those for which she had been receiving prescriptions on a long-term basis, indicting either misuse or non-use of her medications.  The ALJ noted that after this negative drug screen, Vickers initiated treatment with a psychiatrist for the primary purpose of obtaining Xanax.  The ALJ followed this with his observation that "[Vickers'] allegations are not considered totally credible regarding symptom severity and resulting limitations."  The ALJ also disclosed an inconsistency in Vickers' claims about her inability to perform certain types of daily activities.  Specifically, Vickers had reported a need for help with simple, routine activities, but she had also inconsistently revealed to Dr. Vasquez that she was able to serve as a caretaker to her ailing father.  Additionally, the ALJ noted that Vickers denied using illegal substances in the recent past, despite the fact that she tested positive for marijuana at the time of her auto accident on July 17, 2003.  These instances all cast doubt on Vickers' credibility regarding her claimed impairments, pain, and symptoms, and the ALJ is entitled to take this into consideration without interference by a reviewing court.  *See Nelson*, 195 Fed. Appx. at 468; *Garner*, 745 F.2d at 387.

In short, the ALJ considered all evidence of record and found Vickers' claims wanting. Her concluded that, "[w]hile the claimant may experience some level of depression/anxiety, and some level of musculoskeletal discomfort or other symptoms related to her diagnosed conditions, the record fails to support the degree of pain and functional limitations as alleged."  The fact that

20

a different conclusion about Vickers' disability could perhaps be drawn from the record is irrelevant, since the ALJ's conclusion is supported by substantial evidence.  *See Jones*, 336 F.3d at 475 (quoting *Key*, 109 F.3d at 273).  The ALJ did not err in determining that Vickers is not disabled within the meaning of the Social Security regulations.

**WHEREFORE**, For the reasons stated above:

1.      The Plaintiff's Motion for Summary Judgment is DENIED; and

2.      The Defendant's Motion for Summary Judgment is GRANTED.

Dated this 24th day of October, 2007.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**